ROBINSON et al. v. BRAST et al.

(Circuit Court of Appeals, Fourth Circuit. November 8, 1906.)

No: 656.

EQUITY—JURISDICTION—DETERMINING LEGAL RIGHTS ON CROSS-BILL.

A bill in equity was filed by the lessors in an oil lease against the lessee for a discovery and an accounting with respect to royalties reserved by the lease, and for a specific performance of the contract as to delivery of such royalty oil. The defendant answered, and also filed a cross-bill, in which it insisted on its rights under the lease, and alleged that certain other persons who were made defendants thereto claimed ownership of portions of the land, and prayed that their rights be determined by the court. Such defendants appeared, and with the consent of all parties all questions raised by the pleadings were referred to a master who made findings with respect to the title to the lands, which were confirmed by the court and a decree entered. *Held*, that the bill filed by the original defendant was not a bill of interpleader; but a cross-bill in aid of its answer, setting up matters necessary to be determined as preliminary to a decision on the original bill, and which as such the court had jurisdiction to determine, and that all parties having submitted their rights to such determination were bound by the decree, even if it did declare legal rights.

Appeal from the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg.

Dave D. Johnson, for appellants Robinson and Smith.

V. B. Archer, for appellant John Stephens.

Thomas P. Jacobs and R. E. Horner (S. Bruce Hall, on the briefs), for appellees.

Before GOFF and PRITCHARD, Circuit Judges, and BOYD, District Judge.

GOFF, Circuit Judge. From the decree of the court below, entered on the 23d day of August, 1905, this appeal has been sued out. The appellees A. E. Brast and M. A. Brast were complainants in the original bill filed in this controversy on the 31st day of January, 1896, and the appellee the South Penn Oil Company was the sole defendant thereto, the object of which was to enforce the provisions of a contract, and to compel an accounting. Said complainants, claiming to be the owners in fee of a certain tract of 640 acres of land situated in the Northern District of West Virginia, on the 2d day of July, 1892, leased the same for oil and gas purposes to Ira De Witte, who assigned and transferred the lease to the South Penn Oil Company, which company entered upon the land, developed the same, produced oil therefrom, and delivered it to the pipe line company for transportation, as was provided for in the lease. The complainants, who also claimed title to another tract of 347 acres of land, adjoining the one so mentioned, on the 23d of July, 1894, leased the same to the South Penn Oil Company, and that company, proceeding with development, produced oil therefrom and delivered it to the pipe line company. Complainants claimed that they were entitled to one-eighth of the oil as royalty, and that they were also entitled, by usage as well as by law, to a division order from said oil company, by which the oil so delivered to the Pipe Line Company could have been apportioned preparatory to its sale. It was alleged in the bill that the South Penn Oil Company refused to deliver the oil from some of the wells it had drilled on the land, and that it declined to execute a proper division order concerning it. Because of such refusal, and of complainants' inability to discover the quantity of oil that had been produced, and also because of the inadequacy of the remedies provided by law, the bill in equity was filed, by which a discovery, an accounting, and a specific performance was asked for. In March, 1896, the South Penn Oil Company demurred to the bill, on consideration of which the court overruled the same, and appointed a receiver to take charge of the royalty oil. The answer of the South Penn Oil Company was then filed, in which it was set forth that the land, or the portion of it on which the wells were located, belonged to John Blackshere, Charles E. Wells, N. S. Beatty, A. N. Pritchard, and A. W. Pritchard, and that said complainants did not have title thereto, and that therefore some of the royalty oil had not been delivered to them.

The South Penn Oil Company afterwards, in April, 1897, filed in said proceeding its bill, in effect a cross-bill, to which the original complainants and a number of persons who claimed title to different parts of the land included in the leases mentioned were made defendants. It was set out in said bill that the South Penn Oil Company was willing to deliver the oil due under the leases to those justly entitled to the same, and the court was asked to determine as between the various claimants to which of them the royalty oil should be given. A further history of the title to said lands and of the various conflicting claims connected therewith is not deemed essential to the proper disposition of this appeal. It will be sufficient to state that on motion the causes were consolidated, that answers were duly filed, and the case regularly matured for hearing; that the court below by decree disposed of many of

the questions at issue, to the satisfaction of the parties in interest, other than the appellants; that it then appearing there were still conflicting claims to the residue of the oil in the hands of the receiver, and to the land mentioned in the pleadings, the case was referred to a master in chancery, with directions that he report what lands claimed by the defendants to the bill of the South Penn Oil Company were included in the leases made by A. E. and M. A. Brast, the titles of such defendants to the separate tracts of land by them claimed, what amount of the oil had been produced from each of said tracts, and the royalty due to each, and the owner thereof, the quantity of oil in the possession of the receiver, and also a description and the location of each well, together with a special report on any matter required by any party in interest. The master was required to have the evidence taken down in shorthand, transcribed, and returned with his report, and a surveyor was appointed to do such surveying and make such plats as the master might direct, or any party to the litigation should require.

The master, after due notice to all of the parties, proceeded to execute said order of reference, heard all of the evidence offered, examined the title papers submitted by the various claimants, had the necessary surveying and platting made, formulated, and returned his report, together with the evidence, exhibits and his findings. Much time was given by the master, by the attorneys of the various claimants, by the receiver, and by the surveyor, to the investigation and the report made under the decree referred to, and the court, after carefully examining the exceptions taken thereto, by many of the parties in interest, including the appellants, made and entered the decree now complained of.

The assignments of error, many in number, are, when considered in connection with the pleadings and the evidence, unusually technical and absolutely devoid of merit. They relate to the jurisdiction of the court below, and to the method of procedure therein under the rules of equity practice.

The demurrer to the original bill was properly overruled. The case made by it was clearly of equitable cognizance, involving not only specific performance, but a discovery and an accounting. Equity jurisdiction in such cases is elementary; the authorities in support thereof suggesting themselves as the question is presented. But it is insisted, that granting the jurisdiction as to the original bill, nevertheless the court below did not have jurisdiction of the questions raised, nor of the defendants to the bill filed by the South Penn Oil Company. It is called by counsel for appellants a bill of "interpleader," and after they so designate it they suggest that it should not be entertained because the complainant, instead of being a mere stakeholder, was interested in the subject-matter and claimed a decree in its favor. But why should we discuss in connection with this case the technical and elementary questions involved in a bill of interpleader, when a glance at the record submitted for our consideration shows that it was not filed as such a bill, was not so regarded by the parties, nor so treated by the court? The fact that parties claiming an interest in the lands in controversy are called on to produce their titles, and the evidence at their command to sustain their claims—in other words, to interplead concerning those

matters—does not make it technically a bill of interpleader, especially when it is disclosed by the bill itself that the complainant claims the exclusive right to develop and operate the lands in controversy, by virtue of the leases mentioned; refers to the original bill filed by A. E. and M. A. Brast, and insists that it cannot be properly disposed of until other parties interested in the issues involved in it are before the court; prays that the bills be heard together; and asks that the interests of the complainant therein, who was defendant to the original bill, be protected as to the royalty oil in controversy.

This bill was really filed as a cross-bill, in aid of the answer of the sole original defendant, and it contained all of the elements of such a bill. Concede that it contained other features, and it does not follow that thereby it was deprived of the virtue that it clearly had, and that because thereof the court was prevented from decreeing concerning the matters set out by it directly bearing upon the questions presented by the original bill. It is quite clear that the South Penn Oil Company could not have made good the defense set up in its answer to the original bill, except by bringing in other parties, which it did by the bill now under consideration. While it is true that by its bill the South Penn Oil Company prayed that the defendants be required to interplead, so that the question of title might be determined before the royalty oil was delivered, still at the same time it set up and claimed its own interests in and to said leases, and made it quite apparent that it was not filing what in equity practice is called a bill of interpleader. The court below, as well as counsel, including those now representing the appellants, regarded it as a cross-bill, and in all of the subsequent proceedings it was so treated. It was duly answered as a cross-bill by the defendants thereto, and, while an order of consolidation with the first bill filed was afterwards entered, such procedure was unnecessary, and was clearly an inadvertence, which will not now be construed to the prejudice of any of the parties, all of whom acquiesced in such action, and in the decree referring the cause to a master before whom they appeared with their proofs, and concerning whose report they stipulated that it should be accepted by them as conclusive of their respective titles and rights, subject to such exceptions as they might in due time file to it. This court must look at the bills, pleadings, and proceedings had in the cause in the light the record presents them in, and not in that technical manner that the exigencies of the situation confronting the appellants may suggest to them. It would be inequitable, cause great loss, unusual delay, and much confusion, to now change the character of the proceedings had in this litigation, proceedings taken in the court below with the assent of those now complaining. It was the intention of all the parties to avoid a multiplicity of suits, to completely determine their respective rights, and to secure full and final relief to all connected with the subject-matter set forth in both the original and the cross-bills. It was the endeavor of the court below to proceed in the manner desired by those in interest, and in so doing we are unable to find error. The court had acquired jurisdiction of the cause upon well-established equitable grounds, and in its proceedings and adjudications, in order to properly dispose of the controversy involved, even if it established legal rights and decreed legal

remedies, it did not go beyond the scope of its authority. In the course of the litigation the chancellor deemed it proper, for the purpose of aiding him in reaching a just conclusion, to refer the cause to a master, a right that was clearly his, and a discretion that he wisely exercised. He was not bound by the master's report, for he could have ignored it, but, after considering all the exceptions to it, he confirmed it and decreed accordingly, a conclusion in which this court fully concurs. He could have directed an issue out of chancery had he thought best, but he would not have been controlled by the verdict of the jury, had it not commended itself to his conscience. As a chancellor, the court below, having jurisdiction of the original cause, could have disposed of both legal and equitable questions, if such disposition had been found necessary to the proper determination of the issues raised by the pleadings.

The assignments of error embrace other points, but they are without force, and as they are in effect included in the observations already given they are not specifically referred to.

There was no decree against the appellant Robinson, and as to her the appeal was improvidently allowed. The errors assigned by appellants Smith and Stephens are without merit, and the decree appealed from is affirmed.